# United States Court of Appeals
## For the First Circuit

No. 09-1832

ANA MARGARITA VILLA-LONDONO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Selya and Boudin, <u>Circuit Judges</u>.

<u>Carlos E. Estrada</u> on brief for petitioner.
<u>Tony West</u>, Assistant Attorney General, Civil Division, United States Department of Justice, <u>John S. Hogan</u>, Senior Litigation Counsel, and <u>Michael C. Heyse</u>, Attorney, Office of Immigration Litigation, on brief for respondent.

March 12, 2010

**SELYA**, **Circuit Judge**.  The petitioner, Ana Margarita Villa-Londono, is a Colombian national who seeks judicial review of a final order of the Board of Immigration Appeals (BIA) affirming the decision of an immigration judge (IJ).  That decision rejected her claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  After careful consideration, we deny the petition.

The facts are uncomplicated.  On June 30, 2002, the petitioner arrived in Miami and sought to enter the United States by means of a doctored Colombian passport.  Customs agents detected the ruse and detained her.

While in custody, the petitioner proclaimed that she had come to the United States in search of political asylum.  She explained that she had left behind a menacing boyfriend, who was in drug rehabilitation.  She attributed her flight both to her boyfriend's threats and to her vulnerability to guerilla violence.  The claim of vulnerability was based on her employment as a secretary to the mayor of Copacabana, Colombia, coupled with an assertion that the guerillas tended to target public employees.

Several days after her initial debriefing, the petitioner participated in a so-called "credible fear" interview.  At that time, she reiterated the fears that she previously had articulated.  When asked whether she, personally, had encountered any problems with the guerillas, she answered "no."

On July 9, 2002, federal authorities charged the petitioner in the immigration court with (i) inadmissibility by reason of her failed attempt to employ fraud or misrepresentation and (ii) lack of a valid entry document at the time of her application for admission. See 8 U.S.C. §§ 1182(a)(6)(C)(i), 1182(a)(7)(A)(i)(i). The petitioner admitted the government's allegations and cross-applied for asylum, withholding of removal, and protection under the CAT. In this cross-application, the petitioner for the first time related a harrowing story involving a dangerous encounter with guerillas who, in the months leading up to her flight from Colombia, had been harassing her.

In April of 2005, the case was transferred to Boston at the petitioner's request. The petitioner conceded removability and testified in support of her cross-application. In her testimony, she elaborated on her nascent allegations of guerilla harassment.

The tale began in October of 2001. The petitioner averred that she was riding in a bus that was stopped by armed guerillas. One passenger was executed on the spot. The petitioner was not harmed, but the guerillas called her "a medium sized fish . . . the secretary of the mayor." She was spared only because she was not on the guerillas' list of current targets. The horrors of that incident were reinforced by her later receipt of threatening telephone calls from the guerillas.

The IJ inquired why the petitioner had failed to relate this tale in her credible fear interview. The petitioner blamed that omission on a combination of nerves, hypertension, and poorly controlled diabetes, which had compromised her responsiveness at that moment. The petitioner introduced no medical evidence in support of this averment.

In a bench decision, the IJ determined that the petitioner's testimony was not credible. He specifically referenced the glaring discrepancies between the petitioner's statements during her credible fear interview and her testimony at the merits hearing. Those versions were irreconcilable and, as such, the latter version was unworthy of belief.

The other evidence in the record pertained almost entirely to country conditions. Beyond that, there were two petitioner-specific affidavits; nevertheless, neither compelled a conclusion favorable to the petitioner. In all events, the IJ, having discounted the petitioner's testimony, found insufficient evidence to warrant granting any of the requested relief.

The BIA affirmed the IJ's decision. In its view, the IJ had "supported his adverse credibility finding with specific and cogent reasons based on the record." Accordingly, it held that the petitioner had failed to make out a case for either asylum or withholding of removal. By the same token, there was no credible evidence that, if the petitioner were repatriated, any official of

the Colombian government would more likely than not torture her or acquiesce in her torture by others.  Thus, the petitioner's CAT claim also failed.

This timely petition for judicial review followed.  In such matters, we typically review only the BIA's decision.  See, e.g., Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009).  But where, as here, the BIA adopts portions of the IJ's opinion while adding its own comments, we review both the IJ's opinion and the BIA's decision.  Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 5 (1st Cir. 2008).  We undertake that sort of hybrid review in this case.

Our standard of review is familiar.  Factual findings, including credibility determinations, are evaluated under the substantial evidence rubric.  That standard demands that we accept factual findings as long as they are "supported by reasonable, substantial and probative evidence on the record considered as a whole."  Seng, 584 F.3d at 17 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).  Refined to bare essence, this means that in the absence of an error of law, we will set aside the agency's fact-based resolution of a claim only if "the evidence is such as would compel a reasonable factfinder to reach a contrary conclusion."  Id.

In the case at hand, the petitioner advances three arguments.  First, she argues that the adverse credibility determination is insupportable.  Second, she argues that she made

out a compelling case for asylum and/or withholding of removal. Third, she argues that the BIA employed an incorrect legal rule in rejecting her CAT claim. We address the first two arguments together and then proceed to the third.[1]

In order to warrant asylum, an alien bears the burden of demonstrating that she is a "refugee." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1); Seng, 584 F.3d at 18. To come within this category, an alien must demonstrate either past persecution or a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." Seng, 584 F.3d at 18 (quoting 8 U.S.C. § 1101(a)(42)(A)). The alien's credible testimony alone may suffice to carry this burden. Id. But the agency is not required to take such testimony at face value; it may discount or disregard the testimony if the trier "reasonably deems it to be 'speculative or unworthy of credence.'" Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009) (quoting Bebri v. Mukasey, 545 F.3d 47, 50 (1st Cir. 2008)). In the absence of other compelling evidence, "an adverse credibility determination can prove fatal to a claim for

---

[1] In discussing the first two arguments, we need do so only in terms of the petitioner's claim for asylum. After all, claims for withholding of removal require a higher level of proof than claims for asylum. It follows that if a claim for asylum is rejected on the merits, a counterpart claim for withholding of removal must necessarily fail. See Orelien v. Gonzales, 467 F.3d 67, 73 (1st Cir. 2006); Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005).

either asylum or withholding of removal."  Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007).

Here, the petitioner filed for asylum in 2002.  That was before the effective date of the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 302, 303 (effective May 11, 2005). Thus, the bona fides of the adverse credibility determination in this case are governed by the preexisting "heart of the matter" rule.  Seng, 584 F.3d at 18 & n.2.  Under this rule, "an adverse credibility determination may not rest on discrepancies or inconsistencies that are merely peripheral to the alien's claim; instead, the determination must rest on discrepancies or inconsistencies that are central to the claim."  Id.

In mounting her attack on the adverse credibility determination here at issue, the petitioner assails the IJ's reliance on the credible fear interview.  She views the omission of the 2001 bus incident from that account as fully explained and, thus, insufficient to ground an inference of incredibility.[2]

We disagree.  "[W]hen an alien's earlier statements omit any mention of a particularly significant event or datum, an IJ is justified — at least in the absence of a compelling explanation — in doubting the petitioner's veracity."  Muñoz-Monsolve, 551 F.3d

_____

[2] The petitioner's brief seems to suggest that she was under some unspecified duress during the credible fear interview.  To the extent that this argument is raised, it was not exhausted before the agency.  Thus, we lack jurisdiction to consider it.  Olujoke v. Gonzales, 411 F.3d 16, 22-23 (1st Cir. 2005).

-7-

at 8. That precept applies here. The petitioner's explanation was hardly compelling, and the IJ was free to credit it or not, as he thought best.

It makes especially good sense to apply this precept here. A credible fear interview is designed to "elicit all relevant and useful information bearing on" the alien's asylum claim. 8 C.F.R. § 208.30(d). Given that emphasis, the failure to mention either the bus incident or its sequella is virtually inexplicable. What we have here is not a simple failure to recollect a trivial detail. The omitted material comprises the centerpiece of the petitioner's case.

To cinch matters, the omission at issue here is glaring. It occurred not only in the credible fear interview, but also in the petitioner's earlier debriefing. And, finally, it is impossible to reconcile the late-emerging account of the guerilla encounter with the petitioner's explicit assurance that she, personally, had not been involved in any encounters with the guerillas.

Under these circumstances, we think it clear that the IJ acted within his proper purview in relying on the omission — which went to the heart of the petitioner's case — in making an adverse credibility determination. See, e.g., Lumaj v. Gonzales, 446 F.3d 194, 199 n.6 (1st Cir. 2006) (upholding adverse credibility

determination that rested, in part, on a material omission during a credible fear interview).

In an effort to blunt the force of this reasoning, the petitioner suggests that, at the time of the credible fear interview, she thought that she would have another opportunity to give more specific information. She offers no basis for this belief and, in any event, her suggestion does not explain why, in reply to a direct question, she denied any personal contact with the guerillas. On these facts, the IJ was not obligated to credit this possibility.

In sum, the IJ, who saw and heard the petitioner's testimony and explanation at first hand, did not believe her. This adverse credibility determination is supported by specific and persuasive findings. Consequently, we must honor it. See Olujoke v. Gonzales, 411 F.3d 16, 21-22 (1st Cir. 2005).

This holding has a domino effect. With the petitioner's testimony discredited, there is very little other evidence in the record to support her asylum claim. Certainly, a generalized threat of violence in a troubled land, fears of reprisal from a quondam boyfriend, and two affidavits (one stating that she was a good employee and the other confirming the occurrence of the bus incident) do not compel a grant of asylum. See, e.g., Amouri v. Holder, 572 F.3d 29, 34-35 (1st Cir. 2009). Accordingly, we reject the petitioner's second argument out of hand.

This brings us to the petitioner's final plaint: that the BIA impermissibly required governmental action or acquiescence as a precondition to CAT protection. This argument presents an uphill climb for the petitioner; the regulation defining "torture" for CAT purposes appears to require a governmental nexus. See 8 C.F.R. § 1208.18(a)(1); see also Amouri, 572 F.3d at 35. But we need not and do not decide the question. The argument is raised for the first time in this court and is, therefore, unexhausted. Thus, we lack jurisdiction to consider it. See Sela v. Mukasey, 520 F.3d 44, 47 (1st Cir. 2008); Olujoke, 411 F.3d at 22-23.

We need go no further. For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered**.