**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 10-1120

SERGIO DAVID GONZÁLEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, Selya and Howard,
<u>Circuit Judges</u>.

Randy Olen and Robert D. Watt, Jr., on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Cindy S. Ferrier, Senior Litigation Counsel, and Joseph A. O'Connell, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

August 2, 2011

**Per Curiam**.  The petitioner, Sergio David González, is a Guatemalan national.  He seeks judicial review of a final order of the Board of Immigration Appeals (BIA), which affirmed an adverse decision of an immigration judge (IJ).  After careful consideration, we deny the petition.

We draw the facts largely from the petitioner's testimony in the immigration court.  The petitioner worked as a cabinetmaker in Guatemala City.  In the fall of 1989, he agreed to custom-make cabinets for a customer (referred by a friend).  After several weeks, the customer grew impatient and demanded that the petitioner complete the job quickly.  The petitioner hurried but, when he delivered the finished cabinets, the customer complained about the delay and refused to pay.  The customer then brandished a revolver and threatened to kill the petitioner unless he went away.

Although the petitioner departed posthaste, the customer apparently was not appeased.  He repeatedly called the petitioner's home and made further threats.

Concerned for his safety, the petitioner approached a friend who worked as a captain in the police force.  The captain told him that the customer belonged to a unit of the Guatemalan secret police and advised him against taking any action.  Soon afterwards, the petitioner, professing a fear that the disappointed customer would harm him, left Guatemala.

The petitioner entered the United States in 1990, by means of a B-2 visitor's visa. He overstayed the permitted visitation period without authorization and eventually settled in Pawtucket, Rhode Island.

In 1994, the petitioner applied for asylum and withholding of removal. Inexplicably, eleven years passed before immigration authorities conducted an asylum interview on September 21, 2005. The following month, the Department of Homeland Security commenced removal proceedings.

At his initial appearance before the IJ in February of 2007, the petitioner conceded removability. Subsequently, he updated his application for asylum and withholding of removal by checking the appropriate boxes on a standard form. The petitioner first mentioned the allegedly menacing customer in this updated application.

Following a hearing at which the petitioner testified, the IJ found his testimony not credible and denied relief.[1] As to the asylum claim, the IJ found that the feared harm arose out of a "personal disagreement" rather than persecution, and that the petitioner had failed to establish a well-founded fear of future

---

[1] Because the petitioner's claims fail on other grounds, we need not assess the supportability of the IJ's adverse credibility determination.

persecution based on a statutorily protected ground.[2]   The IJ jettisoned the claim for withholding of removal on similar reasoning.   And although the petitioner had never raised a claim for protection under the United Nations Convention Against Torture (CAT), the IJ preemptively rejected such a claim.

The petitioner appealed unsuccessfully to the BIA.   In affirming, the BIA eschewed reliance on the IJ's adverse credibility determination and assumed the truth of the raw facts set out in the petitioner's testimony.   But despite that assumption, the BIA found that the petitioner had failed to satisfy the criteria for eligibility for asylum.   It made a similar disposition of the withholding of removal claim.   Turning to the nascent CAT claim, the BIA overlooked the procedural default, independently reviewed the record, and determined that the petitioner did not satisfy the requirements for CAT protection. Finally, the BIA considered and rejected a contention that a book review chronicling the slaying of a Guatemalan bishop, submitted by the petitioner, lent credence to the petitioner's case.

This timely petition for judicial review followed.   In it, the petitioner argues that the BIA erred in denying his asylum,

---

[2] In general, applications for asylum must be brought within one year of an alien's entrance into the United States or by April 1, 1998 (whichever date is later).   8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(ii).   Because the petitioner first filed for asylum in 1994, his asylum request is timely.

withholding of removal, and CAT claims.  He also renews his plaint concerning the probative value of the book review.

Where, as here, the BIA adopts portions of the IJ's decision and adds its own gloss, we review the BIA's and IJ's decisions as a unit.  Villa-Londono v. Holder, 600 F.3d 21, 23 (1st Cir. 2010).  We assess an agency's findings of fact under the familiar substantial evidence rubric, which requires us to uphold those findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).  "Absent an error of law, we will reverse only if the record compels a conclusion contrary to that reached by the [BIA]."  Mariko v. Holder, 632 F.3d 1, 5 (1st Cir. 2011).

Against this backdrop, we start with the asylum claim. To be eligible for asylum, an alien must establish his status as a refugee.  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a).  A refugee is a person who is unwilling or unable to repatriate due to a well-founded fear of future persecution on account of one of five statutorily protected grounds: "race, religion, nationality, membership in a particular social group, or political opinion."  Morgan v. Holder, 634 F.3d 53, 57 (1st Cir. 2011) (quoting 8 U.S.C. § 1101(a)(42)(A)).  A showing of past persecution creates a rebuttable presumption that an alien harbors

a well-founded fear of future persecution.  Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005).

In the immigration context, "persecution" is a term of art.  To qualify, an alien must show a quantum of harm beyond "mere discomfiture, unpleasantness, harassment, or unfair treatment." Id.; see Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005). Furthermore, that harm must be linked in some meaningful way to the government.  Morgan, 634 F.3d at 57.

Measured against these benchmarks, the infirmities in the petitioner's asylum claim are manifest.  First and foremost, he has failed to hitch his claim to any statutorily protected ground. While he asserts that he is a member of a particular social group, he has not made any effort to describe the contours of the social group in which he asserts membership.

It is clear beyond hope of contradiction that, at a minimum, social group members "must share a common, immutable characteristic, either innate or based on past experiences." Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009).  The petitioner's conclusory allegation does not satisfy this requirement, and the record contains no specifics that might fill the gap. Consequently, his asylum claim founders.  See id. at 42; López de Hincapie v. Gonzales, 494 F.3d 213, 218-19 (1st Cir. 2007).

There is a second independently sufficient ground that supports the BIA's denial of asylum: the petitioner has not shown

-6-

a well-founded fear of persecution. A well-founded fear of persecution "must be both subjectively genuine and objectively reasonable." Morgan, 634 F.3d at 58. Such a fear is objectively reasonable only if a reasonable person in the alien's circumstances would harbor it. Id.; Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999). Here, substantial evidence supports the agency's determination that the petitioner's fear is not objectively reasonable.

The petitioner alleges that the threats made by his quondam customer give rise to his fear. The record shows that these threats occurred over eighteen years before the petitioner's hearing in the immigration court, and the petitioner has not proffered any evidence suggesting that his tormentor is still alive, or still in Guatemala, or still in a position to wreak vengeance, or still holds a grudge. Eighteen years would be a long time to brood over a delayed delivery of furniture. Given this hiatus and the utter lack of any evidence suggesting a current threat, the agency's conclusion that the petitioner's claimed fear is objectively unreasonable is supported by substantial evidence.[3] See, e.g., Touch v. Holder, 568 F.3d 32, 40-41 (1st Cir. 2009) (upholding denial of asylum where claimant's fear was based on

---

[3] The fact that the customer has not harmed the petitioner's siblings, children, or other family members (all of whom still reside in Guatemala) further belies the reasonableness of the petitioner's fear. See Bakuaya v. Mukasey, 533 F.3d 39, 41 (1st Cir. 2008) (per curiam); Aguilar-Solis, 168 F.3d at 573.

events that occurred seven years prior to BIA's decision); Jiang v. Gonzales, 474 F.3d 25, 31 (1st Cir. 2007) (similar; five-year interval); cf. Bonilla-Morales v. Holder, 607 F.3d 1132, 1139-40 (6th Cir. 2010) (denying CAT claim where alien failed to establish that alleged tormentor was still alive); Chahid Hayek v. Gonzales, 445 F.3d 501, 508-09 (1st Cir. 2006) (per curiam) (finding petitioner's fear based on events that took place eleven years earlier insufficient to ground CAT claim).

In an effort to blunt the force of this reasoning, the petitioner points to the aforementioned book review. This document, which concerns a different individual in materially different circumstances, does not change the decisional calculus. The tale is simply too attenuated to generate an objectively reasonable fear of persecution on the petitioner's part. See Seng v. Holder, 584 F.3d 13, 19-20 (1st Cir. 2009) (concluding that allegations of human rights abuses, without any particularized connection to the petitioner, are insufficient, in themselves, to ground a well-founded fear of persecution).

This brings us to the petitioner's quest for withholding of removal. Eligibility for withholding of removal requires that an alien satisfy a standard that is similar to, but more stringent than, the standard for asylum. Villa-Londono, 600 F.3d at 24 n.1; Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). The former requires a "clear probability of persecution," whereas

the latter requires only a well-founded fear of persecution. Anq v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005).

The difference in these standards is telling when asylum and withholding of removal claims are premised on the same nucleus of operative facts. In that event, the alien's failure to establish eligibility for asylum on the merits necessarily dooms his counterpart claim for withholding of removal. Villa-Londono, 600 F.3d at 24 n.1; Rodriguez-Ramirez, 398 F.3d at 123. So it is here.

Finally, the BIA ruled that even if a CAT claim was properly in the case, it would fail. We follow the BIA's lead and assume, for argument's sake, that a CAT claim was seasonably raised. Even so, there is a threshold problem: the argument that the petitioner advances in this court rests on a different theory of CAT protection than the argument that he made to the BIA, where he argued that the police captain's admonition to him showed that the Guatemalan government acquiesced in violence by the secret police. Here, by contrast, the petitioner for the first time ties Guatemalan secret police activity to gang violence. The petitioner's failure to advance this theory before the BIA is fatal. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) (explaining that "theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order").

In all events, the petitioner has not carried his evidentiary burden with respect to the CAT claim. To establish eligibility for CAT protection, an alien must show that it is "more likely than not" that he would be tortured if removed to his homeland. 8 C.F.R. § 1208.16(c)(2). For this purpose, "torture" is an intentional act that inflicts severe physical or mental pain or suffering upon a person. Id. § 208.18(a)(1). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Chhay v. Mukasey, 540 F.3d 1, 7 (1st Cir. 2008) (quoting 8 C.F.R. § 208.18(a)(1)).

Given this standard, the petitioner's CAT claim cannot survive scrutiny. It rests on sheer speculation; he has not made a showing that he will, more likely than not, be targeted and tortured if he returns to Guatemala. The possibility of harm at the hands of the secret police is, for the reasons discussed above, pure speculation. And the mere possibility that he will be exposed to random violence is not enough. See Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009); López de Hincapie, 494 F.3d at 221.

We need go no further. For the reasons elucidated above, the petition for judicial review is denied.

**So Ordered**.