# United States Court of Appeals

## For the First Circuit

No. 11-1889

KA CHEUNG,

Petitioner,

v.

ERIC J. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Circuit Judge</u>,
Souter, <u>Associate Justice</u>,[*]
and Thompson, <u>Circuit Judge</u>.

<u>John Chang</u> on brief for petitioner.
<u>Kristin A. Moresi</u>, Trial Attorney, Civil Division, <u>Tony West</u>,
Assistant Attorney General, Civil Division, and <u>Shelley R. Goad</u>,
Assistant Director, on brief for respondent.

May 2, 2012

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**THOMPSON, Circuit Judge.** Petitioner Ka Cheung ("Cheung"), a native and citizen of Hong Kong, came to the United States in 1999. Rather than head home by the date his entry visa required, he stayed here. In 2010, an immigration judge ("IJ") ordered Cheung removed after determining that he was ineligible for cancellation of removal because he had not maintained ten years of continuous physical presence in the United States as required by section 240A(b)(1)(A)-(D) of the Immigration and Nationality Act ("INA"). Cheung appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision. On appeal to this court, Cheung argues that the BIA erred as a matter of law by failing to address his argument which challenged the IJ's conclusion that he did not establish ten years of continuous physical presence. Discerning no error, we deny the petition.

I. Background

Cheung was legally admitted to the United States on October 19, 1999, by way of an H-1B visa. His visa allowed him to remain in the United States until October 9, 2004. In October of 2004, Cheung applied for an adjustment of status based on his marriage to a United States citizen. The petition for adjustment of status was approved on June 13, 2005. A few years later, on February 24, 2008, Cheung and his wife had their first child, a son.

-2-

For reasons unknown, on August 13, 2009, Cheung's wife requested that the petition she filed on behalf of her husband be withdrawn. Two months later, on October 14, 2009, it was. The very same day, the Department of Homeland Security ("DHS" or "the government") served Cheung with a Notice to Appear ("NTA").[1] In the NTA and pursuant to 8 U.S.C. § 1182(a)(6)(c)(I), DHS charged Cheung as an alien who sought to procure a visa, other documentation, or admission into the United States by fraud or by willfully misrepresenting a material fact. Cheung, in writing and through counsel, denied the charge on April 12, 2010.

Thereafter, on April 23, 2010, DHS amended Cheung's NTA by filing Form I-261 entitled "Additional Charges of Inadmissibility/Deportability." In the I-261, DHS withdrew the original fraud charge against Cheung and in its place, added an entirely new charge alleging that Cheung was removable because he had remained in the United States for longer than his H-1B visa had permitted. In support of this new charge, DHS alleged that Cheung: (1) was admitted to the United States at or near an unknown place on or about October 19, 1999, as a visitor with authorization to remain until October 9, 2004 and (2) remained in the United States beyond October 9, 2004.

---

[1]A Notice to Appear is a document that charges an alien with being removable under the INA. The Notice is served on the alien and then filed in immigration court, commencing removal proceedings. See 8 U.S.C. § 1229(a)(1); 8 C.F.R. § 1003.13.

On June 11, 2010, Cheung filed a written memorandum with the IJ acknowledging that he had overstayed his visa, but nonetheless arguing that he was eligible for relief in the form of cancellation of removal.[2] Approximately a month later, on July 14, 2010, Cheung appeared at a hearing before the IJ and admitted through counsel the factual allegations in the amended NTA and conceded removability pursuant to 8 U.S.C. § 1227(a)(1)(B). At the hearing, he reiterated the arguments raised in his written memorandum, specifically that the NTA was defective because it did not provide him with notice of the substituted overstaying charge[3] and that it should not be a bar to the discretionary relief he sought. Because Cheung admitted he had overstayed his visa and was removable, the IJ found that Cheung was ineligible for cancellation of removal. After both Cheung and the government agreed to waive the issuance of a formal oral decision, the IJ entered a written form order in which he ordered Cheung removed to Hong Kong.

Cheung appealed the IJ's decision to the BIA on August 4, 2010 presenting the same arguments that he had before the IJ. On

---

[2]Cancellation of removal is a form of discretionary relief which permits a non-permanent resident alien to remain in the United States provided he can make the requisite statutory showing pursuant to 8 U.S.C. § 1229b(b)(1)(A)-(D). One of those requirements, and the issue in this case, is ten years of continuous physical presence in the United States. Id.

[3]Pursuant to 8 U.S.C. § 1229(a)(1)(D), every NTA must include a description of the charges against the alien as well as the statutory provisions he is charged with having violated.

July 8, 2011, the BIA upheld the IJ's decision ordering Cheung removed to Hong Kong and dismissed Cheung's appeal. This appeal followed. Generally, this court lacks discretion to review decisions of the Attorney General which fall within his discretion, Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 484-85 (1999); however, Cheung's appeal presents a purely legal question over which we have jurisdiction.[4] See 8 U.S.C. § 1252(a)(1).

II. Standard of Review

In cases where, as here, the BIA adopts portions of the IJ's opinion, but adds its own rationale as well, we review both the BIA's and the IJ's decisions. See Idy v. Holder, No. 11-1078, 2012 WL 975567, at *12 (1st Cir. 2012); see also Villa-Londono v. Holder, 600 F.3d 21, 23 (1st Cir. 2010) (citing Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 5 (1st Cir. 2008)). We review factual findings, including the determination of whether the ten year continuous presence requirement has been met, under the substantial evidence standard. See Villa-Londono, 600 F.3d at 23; see also Bernal-Vallejo v. I.N.S., 195 F.3d 56, 62 (1st Cir. 1999). Under this deferential standard, we must accept the IJ's factual findings so long as they are "supported by reasonable, substantial and

_____

[4]In its brief, the government states that "[t]o the extent Cheung is challenging the validity of his NTA on account of DHS's decision to subsequently amend it . . . the Court lacks jurisdiction to review Cheung's argument." Based on our review of Cheung's brief, we do not think that he is making such an argument.

-5-

probative evidence on the record considered as a whole." Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009). Simply put, in the absence of any error of law, "we will set aside the agency's fact-based resolution of a claim only if 'the evidence is such as would compel a reasonable factfinder to reach a contrary conclusion.'" Villa-Londono, 600 F.3d at 23 (quoting Seng, 584 F.3d at 17).

However, "[q]uestions of law are treated differently" and "engender de novo review, with some deference to the agency's reasonable interpretations of statutes and regulations that are within its sphere of authority." Seng, 584 F.3d at 17. That said, Cheung does not contest the sufficiency of the evidence. Rather, his only contention on appeal centers around a question of law which we will turn our attention to now.

III. Discussion

In order to be eligible for cancellation of removal, among other things (not at issue in this case), Cheung must prove ten years of continuous physical presence in the United States. See 8 U.S.C. § 1229b(b)(1)(A); see also 8 C.F.R. § 1240.8(d). Pursuant to 8 U.S.C. § 1229b(d)(1), the so called "stop-time" rule, an alien stops accruing continuous physical presence upon service of a NTA. See id. ("[A]ny period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear . . . ."); see also Vasquez v. Holder, 635 F.3d 563, 566 (1st Cir. 2011) (stating that an alien's

-6-

accrual of physical presence is cut off on the date that he is served with a Notice to Appear).

Cheung argues that it was error to apply the "stop-time" rule to the October 14, 2009 NTA because the charge alleged, fraud, was subsequently withdrawn and a new charge, overstaying, was added with the filing of Form I-261 approximately six months later. According to Cheung, but for the single original charge of fraud, no NTA would have ever issued as of October 14, 2009, since at that time, there were no other charges alleged within the NTA. Moreover, Cheung argues that the October 14, 2009 NTA, when issued, was defective because it failed to give him notice of "'[t]he [subsequent] charge[] against [him],'" as well as "'the statutory provisions alleged to have been violated.'" 8 U.S.C. § 1229(a)(1)(D). Therefore, he argues that service of the first NTA did not constitute a "stop-time" event for purposes of accruing continuous physical presence and that he is therefore eligible for cancellation of removal.

Cheung admits that he arrived in the United States on October 19, 1999 and that he was served with the NTA on October 14, 2009. A rather straightforward calculation confirms that based on those two dates, Cheung missed the ten years' continuous physical presence requirement by a mere five days. That said, our inquiry on appeal is to determine whether there is any merit in Cheung's

-7-

argument that the first NTA did not stop time for purposes of accruing continuous physical presence. We find that there is not.

We think a proper starting point is with this court's decision in Magasouba v. Mukasey, 543 F.3d 13 (1st Cir. 2008), which we find instructive for purposes of the present situation. In Magasouba, the petitioner was ordered removed after being convicted in state court of two offenses stemming from his selling of pirated copies of DVDs and CDs. Id. at 14. The NTA alleged that petitioner was removable based on the following convictions: (1) a theft offense which constituted an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(G) and (2) two crimes of moral turpitude. Id. In response to the NTA, petitioner filed a motion to terminate removal proceedings. Id. Realizing that neither allegation in the NTA could hold water, the government issued a Form I-261, the same exact form issued here, and included an amended charge based solely on 8 U.S.C. § 1101(a)(43)(R).[5] Id. at 16. The petitioner failed to object to the filing of the new charge within the I-261 and received additional time to respond to the new charge. Id. Nevertheless, he argued on appeal that "the government could not repair the defective notice to appear simply by filing a new charge

_____

[5]This section deems the following as constituting an aggravated felony:

an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(R).

-8-

on Form I-261; rather, it was required to dismiss the original notice to appear and issue a new one." Id. According to the petitioner, had that procedural process been followed, the judge would have barred the government from seeking his removal based on the substituted charge. Id.

In agreeing with the BIA that Magasouba's claim fell short, we first stated that "[b]y regulation, the government is entitled to lodge 'additional or substituted charges' of removability '[a]t any time during the proceeding.'" Magasouba, 543 F.3d at 16 (quoting 8 C.F.R. § 1240.10(e)). Additionally, we noted that "there is no requirement that the [government] advance every conceivable basis for deportability in the original show cause order." Id. (quoting De Faria v. I.N.S., 13 F.3d 422, 424 (1st Cir. 1993) (per curiam)). Despite Cheung's claims to the contrary, we think the same analysis, and ultimately, the same fate, applies here.[6]

Cheung concedes removability based on the substituted charge of overstaying as described in the I-261, but nonetheless argues that discretionary relief, specifically, cancellation of removal, is available to him. But like the petitioner in

_____

[6]In a footnote, Cheung tries to distinguish Magasouba from the present case because in that case, "although the [government] amended the NTA to withdraw two grounds of removability, a third original charge remained." Therefore, according to Cheung, "the NTA . . . would still meet the requirements of 8 U.S.C. § 1229(a) because it still contained a single charge of removability." Id. We deem it a distinction without a difference.

Magasouba, he was afforded ample notice of the substituted charge, failed to object to the filing of the new charge, and had an opportunity to respond at a hearing before the IJ. Moreover, Cheung admits that the government has the authority to amend the NTA at any time and that there is no requirement that the government name every possible ground for removability in the original NTA. Despite his own concession, federal regulations, and this court's precedent, he nevertheless contends -- just like the petitioner in Magasouba -- that the government could not amend the NTA by filing the I-261 but instead, was required to issue a new one. According to Cheung, had the government followed this procedure, he would have met the ten years' continuous physical presence requirement and would have been eligible for cancellation of removal. Based on our decision in Magasouba, as well as the federal regulations, both of which Cheung readily accepts and acknowledges as true, we simply cannot agree. See id.; see also 8 C.F.R. § 1240.10(e) ("At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by the [government] in writing."); id. § 1003.30 (same).

In this case, we agree with the IJ that the I-261 form, filed six months after the NTA, was not a "new NTA" but an "amended" NTA, and that although the original charge of

removability was withdrawn, the NTA itself was not.  Indeed, the I-261 explicitly states that,

> There is/are hereby lodged against you the additional charge(s) that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:
> . . .
>
> The Department withdraws the charges of removability under sections 212(a)(6)(C)(I).
> . . .
>
> The Department lodges the following charge: Section 237(a)(1)(B) of the Immigration and Nationality Act (Act), as amended, in that after  admission as a non immigrant under Section 10(a)(15) of the Act, you have remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States.

We think the language in the Form I-261 makes clear that in addition to withdrawing the initial charge of fraud, the government was adding a new charge of removability based on Cheung overstaying his visa.  Consequently, Cheung's arguments that the October 14, 2009 NTA was withdrawn by the government and that the I-261 left the NTA void of any charges are without merit.

Additionally, we agree with the IJ's conclusion that for purposes of determining whether Cheung was eligible for cancellation of removal, "the determinative factor . . . [was] not whether the charge with which [Cheung] was originally charged was sustained or sustainable" but rather, "when [Cheung] was placed into removal proceedings."  Because Cheung was placed into removal

-11-

proceedings on October 14, 2009 -- the date the original NTA was served -- and because the original NTA was never withdrawn, Cheung was ineligible for cancellation of removal because he failed to meet the ten years' continuous physical presence statutory requirement.

On appeal to the BIA, the BIA essentially agreed with the IJ's decision adding only that the government had "acted within its prosecutorial discretion to withdraw one charge and to substitute another, given that [Cheung] was afforded notice of the matter," a finding that Cheung does not contest. We agree. Moreover, and despite Cheung's claims to the contrary, we think the BIA's decision makes clear that it considered Cheung's argument that the service of the NTA did not trigger the stop-time rule, but was ultimately unconvinced. In the end, to the extent Cheung challenges the IJ's and BIA's decisions as a matter of law, there was no error.

IV. Conclusion

After careful consideration of the record, the petition for review is denied.