FILED

MAR 17 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-16-1241-TaFC |
| JON W. CHAFFEE, | Bk. No.   8:14-bk-12834-SC |
| Debtor. | Adv. No.  8:14-ap-01215-SC |
| B. CASEY YIM, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JON W. CHAFFEE, | |
| Appellee.[**] | |

Argued and Submitted on February 23, 2017
at Pasadena, California

Filed – March 17, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable  Scott C. Clarkson, Bankruptcy Judge, Presiding

Appearances:  B. Casey Yim, pro se.

Before:  TAYLOR, FARIS, and CLEMENT,[***] Bankruptcy Judges.

---

[*]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**]  Debtor-Appellee did not file a brief.

[***]  The Hon. Fredrick E. Clement, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

## INTRODUCTION

B. Casey Yim appeals from the bankruptcy court's judgment in favor of debtor Jon Chaffee in an adversary proceeding objecting to discharge of Yim's claim under § 523(a)(2)(A) and (a)(2)(B).[1]  We AFFIRM the bankruptcy court.

## FACTS

On June 10, 2013, Yim agreed to sell Debtor property in Newport Beach for $2,475,000.  To memorialize the agreement, they entered into a purchase and sale agreement (the "PSA Contract").  For the purposes of this nondischargeability action, Debtor and Yim stipulated to, among others, the following facts:

5.  The transaction was to be performed as an "All Cash" transaction without loan or financing contingencies permitted to the buyer (Chaffee).  PSA Contract, paras. 3. J. and K (Plaintiff's Trial Exhibit 1).

6.  Specifically, under the aforesaid PSA Contract, para. 3.j., the transaction was expressly stated to be an "All Cash" transaction, without loan or financing contingencies.

7.  Under para. 3.K. of the PSA Contract (Plaintiff's Trial Exh. 1), debtor-defendant agreed and represented, in writing, that "Buyer's failure to secure alternate financing does not excuse buyer from the obligation to purchase the property and close escrow as specified in this purchase agreement [the 'PSA Contract' herein]"

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

8. At the time the parties entered into the PSA Contract, the debtor-defendant did not intend to perform the contract as an "All Cash" transaction without a loan or funding contingency to be obtained from a third party lending or financing source.

9. At the time the parties entered into the PSA Contract, the debtor defendant did not have liquid assets or cash of his own to purchase the subject property as an "All Cash" transaction.

10. At the time the parties entered into the transaction, the debtor defendant did not have any written or contractual commitment from any third party lending or financing source to provide the funds need to permit defendant to purchase the subject property as an "All Cash" transaction.

11. At the time the parties entered into the PSA Contract, defendant could not and had no financial ability to perform the contact as an "All Cash" transaction as represented in his written PSA Contract signed by him on or about June 10, 2013. (Exhibit 1)

12. Defendant Chaffee never intended to perform the subject PSA contract dated June 10, 2013, as an "All Cash" transaction without any third-party loan or financing contingency at the time the parties entered into the PSA Contract and at all times thereafter.

13. Defendant instead intended to perform by making financing arrangements for payment funding from some other third party lending or financing source.

14. Defendant did not disclose to Plaintiff his intent to not

3

perform as an "All Cash" transaction.

15. Defendant did not disclose to plaintiff-Seller his true intent to condition his performance upon loans or financing arrangements from third-party lending or financing sources.

16. Plaintiff relied on Defendants "selected method of financing" under the PSA Contract as "All Cash" in entering into the PSA Contract with defendant.

17. Under the PSA Contract, para. 3 (K) (Plaintiff's Exhibit 1), the parties expressly covenanted and represented, in writing, as follows:

"Seller has relied on Buyer's representation of the type of financing specified (including, . . . all cash). If buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing; and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement."

18. Defendant did not have his own funds, nor did he obtain third-party loan financing to pay the purchase price, and therefore breached the subject PSA Contract by failure to pay by the contracted closing date, July 10, 2013.

19. Plaintiff was able to find and arrange for another buyer for the property to mitigate his damages; however the replacement buyer's contracted re-sale price was only $2,375,000, or $100,000 lower that Defendant's contract price; and did not close until Dec. 13, 2013.

4

In September 2013, Yim sued Debtor in California state court for breach of contract and specific performance. Yim obtained a default judgment for $328,166.08, plus post-judgment interest.

**Debtor files bankruptcy; Yim brings a nondischargeability action.** In May 2014, Debtor filed a voluntary chapter 7 petition. Yim later commenced an adversary proceeding seeking to hold the default judgment nondischargeable under § 523(a)(2). Eventually, the parties prepared a joint pretrial stipulation and proposed order. After some procedural missteps, the matter was set for trial by declaration. Yim submitted a trial brief, his declaration, and his trial exhibits. Debtor also submitted a declaration and trial exhibits.

The bankruptcy court heard the matter, but Debtor did not appear. On Yim's oral motion, the bankruptcy court struck Debtor's declaration and trial exhibits. The bankruptcy court reviewed the pretrial order and factual admissions; it then engaged in an extensive colloquy with Yim about the case. Finally, the hearing concluded with the bankruptcy court's oral ruling that Yim failed to prove the required elements by a preponderance of the evidence. The bankruptcy court later issued a memorandum decision. Bankruptcy Court's Memorandum of Decision Regarding Non-Dischargeability Proceeding Under §§ 523(a)(2)(A) and (a)(2)(B), Aug. 19, 2016 ("Mem. Dec."). Yim does not challenge the decision under § 523(a)(2)(B) on appeal. The bankruptcy court then entered judgment in Debtor's favor and against Yim. Yim timely appealed.

5

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in determining that Yim's claim is dischargeable.

**STANDARD OF REVIEW**

We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002); Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir. 1996) ("A finding of whether a requisite element of section a [sic] 523(a)(2)(A) claim is present is a factual determination reviewed for clear error."); see also Eugene Parks Law Corp. Defined Benefit Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1992) ("The determination of justifiable reliance [under § 523(a)(2)(A)] is a question of fact subject to the clearly erroneous standard of review.").

"Clearly erroneous review is significantly deferential, requiring that the appellate court accept the [trial] court's findings absent a definite and firm conviction that a mistake has been made." United States v. Syrax, 235 F.3d 422, 427 (9th Cir. 2000). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003). A factual finding is clearly erroneous, however, if, after examining the evidence, the reviewing court "is left with the definite and

6

firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal citation omitted).

**DISCUSSION**

Section 523(a)(2)(A) excepts from discharge a debt resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The creditor bears the burden of proving § 523(a)(2)(A)'s applicability by a preponderance of the evidence. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010). In the Ninth Circuit, the five elements for a § 523(a)(2)(A) nondischargeability claim are:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of [the debtor's] statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); see In re Sabban, 600 F.3d at 1222; Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (9th Cir. BAP 2009).

We start with a notable absence: Debtor. Debtor did not file a brief in this appeal. He also failed to show up at the July 27, 2016 hearing, which was to be a trial on the merits.[2]

---

[2] In affirming, we do not condone Debtor's non-participation.

7

Accordingly, the bankruptcy court essentially transformed the trial into a default prove-up hearing and engaged Yim (an attorney) in a substantive conversation about his case's merits. That said, we do not treat the discussion as evidentiary because the bankruptcy court did not receive Yim's testimony under oath (other than through his declaration).

The bankruptcy court concluded that Yim failed to prove any of the elements by a preponderance of the evidence. Thus, to prevail in this appeal, Yim must show that the bankruptcy court erred in every respect.

**A.   The bankruptcy court properly concluded that Yim failed to establish the first and second elements of § 523(a)(2)(A).**

Considering the first and second elements in tandem, the bankruptcy court concluded that Yim failed to prove either that Debtor made a representation that he knew at the time was false or that Debtor made a fraudulent omission. We consider each separately.

*A knowing misrepresentation.* The bankruptcy court explained:

> Plaintiff never alleged that Defendant made an oral promise or representation at all. The only source of any alleged misrepresentation is the Agreement, the AKM Letter, and the joint pretrial stipulation. In other words, Plaintiff does not point to any other source (oral or written) for Defendant's alleged misrepresentation. However, none of the sources cited by Plaintiff support his assertion that Defendant "Represented that he had sufficient liquid cash assets to perform without requiring loan financing."

Mem. Dec. at 6.

On appeal, Yim argues that the bankruptcy court erred by substituting its interpretation of the Agreement for the

8

parties' "mutual understanding" of the Agreement as reflected in the joint stipulation. He asserts the "fraud, false pretense and false representation claim in this case is simple." Aplt's Opening Br. at 5. In particular, he argues:

> The PSA represented an offer made by debtor to purchase the property as an "All Cash" transaction, which the parties stipulated meant that there would be no loan or financing contingency allowed to the debtor-buyer. . . . The parties stipulated to the meaning of these terms of the PSA contract—"All Cash; no loan contingency."

Id. at 11—12 (record citations omitted). Yim essentially interprets Debtor's checking the "all cash" box as a representation that when Debtor signed the Agreement on June 10, 2013, he had the cash on hand to pay $2,475,000. But nothing Yim points to establishes this representation; we thus agree with the bankruptcy court. As the bankruptcy court observed, Yim pointed to only three sources: the PSA Contract; the joint pretrial stipulation; and a "line of credit" letter (the "AKM Letter").

First, we turn to the PSA Contract. Yim and Debtor signed a California form residential real estate purchase agreement. They agreed, among other things, that Debtor would buy a property for $2,475,000. PSA Contract ¶ 1.B and 1.C. Under the finance terms section, they provided for no deposit and agreed that the contract was not contingent on an appraisal. PSA Contract ¶ 3.A and 3.I. They checked the "ALL CASH OFFER" box, which also provides: "Buyer shall, within 7 . . . Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction." PSA Contract ¶ 3.J. The very next line states:

9

BUYER STATED FINANCING: Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

PSA Contract ¶ 3.K. The PSA Contract does not require or represent that the buyer has sufficient cash on hand to purchase the property on the day of execution. As the bankruptcy court explained, the Agreement "contemplates that even a buyer with an 'all cash' offer may seek alternate financing, so long as the buyer also pursues the 'all cash' method of financing." Mem. Dec. at 9. Indeed, the Agreement's default terms (which Yim and Debtor agreed to) give Debtor seven days to provide proof of funds.

Second, the pretrial order's stipulated facts do not contradict this. They rightly reflect that the transaction was "All Cash" and "without loan or financing contingencies". They also state that, under ¶ 3.K, Debtor agreed that his failure to obtain alternate financing would not excuse his obligation to purchase the property. But the pretrial order does not establish that Debtor represented that he had $2,745,000 in cash or other liquid assets on June 10, 2013.

Last, the AKM Letter does not represent that Debtor had

10

$2,745,000 cash on hand. Yim does not argue otherwise.[3]

What, then, did Debtor represent? He represented that he would purchase the property from Yim on July 10, 2013. As it turns out, Debtor was unable to purchase the property on July 10. But, as Yim concedes in the stipulated facts, Debtor "intended to perform by making financing arrangements for payment funding from some other third party lending or financing source." Thus, at the time Debtor made the representation, he did not know it would be false. Indeed, the facts reflect the opposite: Debtor intended to perform.

Yim's insistence that Debtor made a misrepresentation derives from his misinterpretation of what "all cash" and "without loan or financing contingencies" mean.[4] From Debtor's perspective, if there are loan or financing contingencies, Debtor's inability to satisfy the contingency (i.e., to timely obtain a loan) would excuse him from having to pay the full $2,745,000 on July 10 (in a typical scenario, he might forfeit a deposit). Absent these contingencies, Debtor's failure to procure a loan or other financing does <u>not</u> excuse his payment; he is obligated for the full amount. From Yim's perspective: with contingencies, Yim does not have a claim for breach of

---

[3] At oral argument, Yim pointed to paragraph 7 of his trial declaration. But this, also, does not contain a representation from Debtor that he had sufficient cash on June 10, 2013.

[4] Yim is clearest in paragraph 6 of his trial declaration: "This 'all cash' term **meant to me** that . . . [Debtor] had sufficient liquid assets or cash to pay the purchase price without qualifying for or obtaining a loan or outside financing from any third party source." (Emphasis added.)

11

contract because the contract is not breached; without contingencies, Yim has a claim for breach of contract.

The stipulated facts do not even establish that Debtor intended to condition his liability under the contract on his obtaining a loan; rather, they show that he intended to "condition" his performing on his obtaining third-party financing. As it turns out, this was naive on Debtor's part: Yim held Debtor to the contract and obtained a judgment.

In short, by checking the "all cash" box, Debtor represented that he would pay Yim $2,745,000 on July 10 and that an inability to obtain funding would not excuse this. Under the stipulated facts, Debtor intended to pay Yim $2,745,000 on July 10. Accordingly, the bankruptcy court did not err when it concluded that Yim failed to prove, by a preponderance of the evidence, that at the time Debtor made the representation he knew it was false.

*A Fraudulent Omission.* The bankruptcy court concluded that Yim failed to prove that Debtor made a fraudulent omission: "Here, [Yim] has not established that [Debtor] had a duty to disclose his intention to pursue financing or that such fact was basic to the transaction." Mem. Dec. at 11. The bankruptcy court went even further: "Even if [Debtor] was under a duty to disclose, [Yim] cannot claim that he was ignorant of [Debtor's] intention to pursue financing . . . ." Id.

On appeal, Yim seems to argue that Debtor made a fraudulent omission:

> Debtor admitted that he did not have sufficient cash to perform, and had no ability to get the cash from a third party lending source. The Debtor also admitted

12

> that he failed to disclose to Yim (concealed) his intent not to perform under the PSA terms, and he failed to disclose his true intentions to <u>condition his performance</u> upon obtaining third-party financing in blatant contradiction of the agreed contract terms.

Aplt's Opening Br. at 15 (record citations omitted). But Yim does not argue that Debtor was under a duty to disclose. This is fatal. "A debtor's failure to disclose material facts constitutes a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose and the debtor's omission was motivated by an intent to deceive." <u>Harmon v. Kobrin (In re Harmon)</u>, 250 F.3d 1240, 1246 n.4 (9th Cir. 2001) (citing <u>Citibank (South Dakota), N.A. v. Eashai (In re Eashai)</u>, 87 F.3d 1082, 1089–90 (9th Cir. 1996)). Nor does Yim challenge the bankruptcy court's further finding that, even if Debtor were under a duty to disclose, Yim was not ignorant of Debtor's "true" intent.

In sum, we agree with the bankruptcy court that Yim failed to prove the first and second elements of § 523(a)(2)(A). Having determined that the bankruptcy court did not err when it concluded that Yim failed to establish a knowingly false representation by a preponderance of the evidence, we could stop here. Yim's case fails without a misrepresentation. That said, we briefly consider another element — one where Yim disagrees with the bankruptcy court's application of the underlying legal standard. He is wrong there, as well.

**B. The bankruptcy court properly concluded that Yim failed to establish justifiable reliance by a preponderance of the evidence.**

On the fourth element, the bankruptcy court found that Yim "is a sophisticated and experienced business attorney who has

13

conducted many trials in state and federal court, including real estate trials." Mem. Dec. at 14. And it "h[e]ld Plaintiff to that level of capacity, knowledge, and sophistication." Id. Next, the bankruptcy court found that "there were numerous, obvious 'red flags' which should have compelled [Yim] to investigate further." Id. at 14–17. For example, Debtor and Yim did not have a prior relationship. Id. at 14–15. Yim did not perform any due diligence or investigate Debtor's creditworthiness. Id. at 15. Yim did not seek a deposit. Id. Instead, Yim relied on a letter that, by its very terms, should have raised red flags. Id.

On appeal, Yim contends that the bankruptcy court imposed on him a heightened standard of reliance, when under relevant case law "only a relaxed 'justifiable reliance' standard need be shown . . ." Aplt's Opening Br. 32. Yim correctly observes that justifiable reliance is not an objective standard; it is a subjective standard. But he perhaps misunderstands what a subjective standard is: he suggests that a subjective standard is always more relaxed than an objective, reasonable person standard. Not always so.

"[A] creditor's reliance on a debtor's misrepresentation need be only justifiable, not reasonable," for § 523(a)(2)(A) purposes. In re Eashai, 87 F.3d at 1090. Justifiable reliance "turns on a person's knowledge under the particular circumstances." Id. The bankruptcy court "must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." In re Kirsh, 973 F.2d

14

at 1460. It "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." In re Eashai, 87 F.3d at 1090 (internal quotation marks and citations omitted). In some cases, justifiable reliance requires the creditor to investigate somewhat. Field v. Mans, 516 U.S. 59, 76 (1995) ("[These particular creditors] may recover, at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways . . . .").[5]

Here, the bankruptcy court properly identified justifiable reliance as a subjective standard and then properly applied the facts. First, Yim does not dispute that he is an attorney with substantial litigation and real estate experience.[6] Second, Yim does not challenge the bankruptcy court's numerous findings of obvious red flags in this particular case that should have compelled him, an experienced real estate attorney,[7] to

_____

[5] In others, a "person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." In re Eashai, 87 F.3d at 1090 (internal quotation marks and citations omitted).

[6] To the extent the bankruptcy court based its factual finding on the argumentative colloquy at the hearing, this was harmless because Yim had earlier provided the bankruptcy court a declaration: "I have over 35 years of litigation experience, and have actual trial and arbitration experience, in commercial, contract, real estate, and Professional Liability cases."

[7] See, e.g., In re Kirsh, 973 F.2d at 1460 ("Parks was no ordinary person. In fact, he was not even an ordinary attorney.
(continued...)

15

investigate further. Mem. Dec. at 14. Third, Yim argues that the bankruptcy court inappropriately rejected his undisputed testimony that he was fully justified in relying on the AKM Letter. We do not agree with Yim's implicit argument that his conclusory[8] testimony prevents the bankruptcy court from evaluating justifiable reliance; in any event, he fails to challenge the bankruptcy court's identification of the transaction's **other** red flags, such as the lack of a deposit,[9] which should have compelled him to investigate further. Fourth, Yim's reliance on Barnes v. Roberts (In re Roberts), 538 B.R. 1 (Bankr. C.D. Cal. 2015), is misplaced. It does not stand for the legal proposition that justifiable reliance will never require a creditor to investigate further. Instead, In re Roberts rightly states that justifiable reliance depends on the particular circumstances of each case. Id. at 10-11. What's more, its facts show a creditor who, unlike Yim,

---

[7](...continued)
He had been practicing for twenty years and concentrated on business law. He was well aware of the fact that standard practice in California was for lenders to obtain title reports. Lenders do not merely rely upon the representations of borrowers. . . . A person with Parks' knowledge, experience and competence should have ordered [a title report].").

[8] Yim's conception of justifiable reliance is suspect; accordingly, his "testimony" about it is equally suspect.

[9] Mem. Dec. at 15; id. at 15 n.2 ("A debtor's ability to fund a deposit is relevant to the justifiable reliance analysis." (citing In re McClendon, 415 B.R. 170 (Bankr. D. Md. 2009)).

16

investigated extensively.[10]

In short, Yim believes that justifiable reliance means no creditor will ever have to investigate a debtor's representations — put differently, he believes a subjective standard should be applied uniformly across all cases. But a subjective standard does not apply categorically. And Yim otherwise fails to dispute the bankruptcy court's particular application of the subjective standard to him.

Yim alternatively argues that he did not need to establish justifiable reliance because Debtor failed to disclose a material fact. Aplt's Opening at 25. But Yim must show that Debtor was under a duty to disclose. Apte v. Japra (In re Apte), 96 F.3d 1319, 1323 (9th Cir. 1996) ("Indeed, the nondisclosure of a material fact **in the face of a duty to disclose** has been held to establish the requisite reliance and causation for actual fraud under the Bankruptcy Code." (emphasis added)). And Yim concedes the bankruptcy court's conclusion that he failed to establish: (1) that Debtor was under a duty to disclose; and (2) even if Debtor were under a duty to disclose, that Yim was ignorant of Debtor's intent to seek alternate

---

[10] See id. at 13 ("Barnes investigated all the disclosed parties and because he found no red flags initially, he invested in the Venture."); id. at 18 ("Barnes is a sophisticated investor but he had no previous experience with investing in this type of venture. . . . Barnes did his due diligence in investigating the key partners in the Venture and looked at Manjar and CFI prior to investing. Barnes was thorough in his investigation and follow-up questioning into the Venture prior to investing and did not act in an unusual or unreasonable manner.").

financing. Thus, Debtor's alleged non-disclosure does not establish justifiable reliance.

In sum, the bankruptcy court properly found that Yim failed to prove the fourth element of a § 523(a)(2)(A) claim.

**C.** **Husky does not alter our conclusion.**

Yim also argues that the bankruptcy court misapplied the Supreme Court's then-recent decision in Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581 (2016). His analysis is not clear, and he completely misreads the case in part. Compare Aplt's Opening Br. at 19 ("The Court further held that 'actual fraud' . . . also covers 'acts of deception that 'may exist without the imputation of bad faith or immorality.'"), with Husky, 136 S. Ct. at 1586 ("'Actual' fraud stands in contrast to 'implied' fraud or fraud 'in law,' which describe acts of deception that 'may exist without the imputation of bad faith or immorality.'"). That aside, he argues the bankruptcy court erred in two respects: first, "by refusing to accept the admitted terms of the parties' contract itself (all cash, no loan contingency) as evidence of the fraud and of Debtor's intent to deceive"; and second, by refusing "to accept Debtor's own admission of his actual fraud in the Joint Stipulation."

We disagree. First, as a general matter, Husky holds that the "term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." Husky, 136 S. Ct. at 1586. This does not alter the Ninth Circuit's elemental recitation for misrepresentation or false pretenses. Second, we have already addressed how Yim misunderstands the PSA Contract's terms and

18

the pretrial stipulation's facts.  The bankruptcy court did not misapply <u>Husky</u>.

**CONCLUSION**

Based on the foregoing, we AFFIRM.