# United States Court of Appeals
## For the First Circuit

No. 09-2632

MOURCOUS MORGAN MORGAN ET AL.,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Lipez, Selya and Howard, Circuit Judges.

Saher J. Macarius, with whom Audrey Botros and Law Offices of
Saher J. Macarius were on brief, for petitioners.
Tony West, Assistant Attorney General, Civil Division, United
States Department of Justice, with whom Anthony J. Messuri, Trial
Attorney, Office of Immigration Litigation, and J. Jocelyn Lopez
Wright, Senior Litigation Counsel, Office of Immigration
Litigation, were on brief, for respondent.

February 11, 2011

**SELYA**, <u>Circuit Judge</u>.  The petitioner, Mourcous Morgan Morgan, is an Egyptian national.  Alleging that he fears persecution on account of his Coptic Christian faith, he seeks judicial review of a final order of the Board of Immigration Appeals (BIA), which upheld an adverse decision by an immigration judge (IJ).  At the same time, he seeks judicial review of the BIA's denial of his motion to remand.  After careful consideration, we deny the petition in all particulars.

Morgan entered the United States on September 23, 1998, on a non-immigrant visa authorizing him to remain for one month. He over-stayed and, in February of 1999, applied for asylum.[1]

After an asylum officer interviewed Morgan and declared him ineligible for relief, the government instituted removal proceedings.  Morgan conceded removability and cross-applied for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture (CAT).

At an ensuing hearing, Morgan testified that he had been mistreated in his homeland on account of his Coptic Christian faith.  He said that, in the summer of 1992, children whom he was escorting to church were twice taunted and stoned by Muslim youths. A year later, he and several other parishioners undertook a

_____

[1] In July of 1999 Erein Mansour Ibrahim arrived in the United States.  The couple wed within a matter of weeks, and Ibrahim is named as a derivative beneficiary of Morgan's asylum application. For ease in exposition we discuss the case as if it involved Morgan alone.

surreptitious and illegal expansion of the church facilities. When a building inspector discovered the work, Morgan and his compatriots were arrested and spent a night in jail. Some time after his release, he refused to allow a Muslim man to enter the church and the man cut him with a bottle. On the evening of December 31, 1996, Morgan witnessed a water balloon strike a church member. Morgan acknowledged, however, that it was customary to toss water balloons on New Year's Eve.

Morgan's tale continued. He testified that, in April of 1998, he persuaded a Coptic Christian friend to break off her romance with a Muslim man. Angered by Morgan's intervention, the man threatened him. Soon thereafter, a group of men (ostensibly friends of the jilted suitor) accosted Morgan and assaulted him. When more threats followed, Morgan fled to the United States.

Morgan also related some second-hand information about events allegedly occurring in Egypt after his departure. His father had been struck by a speeding car, and Morgan alleged that the spurned suitor had taken credit for this episode. Morgan further alleged that the suitor made dire predications about Morgan's fate should he (Morgan) return to Egypt.

At the conclusion of the hearing, the IJ considered Morgan's testimony and reviewed copious documentary evidence describing country conditions in Egypt. She ruled that Morgan had

failed to carry his burden of proof on any of his claims for relief. Accordingly, the IJ ordered his removal.

Morgan appealed, and the BIA affirmed without opinion. Morgan then petitioned for judicial review. On October 16, 2002, we dismissed the petition as untimely. Morgan v. INS, No. 02-2117 (1st Cir. Oct. 16, 2002) (unpublished order).

One week later, Morgan filed a motion to reopen with the BIA, alleging changed circumstances. The BIA denied the motion as failing to identify new and previously unavailable evidence of changed circumstances. Morgan renewed his motion on July 7, 2005, attaching numerous accounts of hardships suffered in contemporary Egypt by the Coptic Christian population, accounts of recent incidents involving members of Morgan's family, and assertions that threats had been made against his life. The BIA granted the motion and returned the case to the immigration court.

On remand before a different IJ, Morgan relied upon the evidence that he had proffered to the BIA, supplemented by his account of certain events involving relatives residing in Egypt. He claimed that, in 2004, his brother Magdhin reported to the police that four people had obstructed his car. In speaking with the police, Magdhin did not characterize his assailants as "Muslim extremists"; in a later telephone conversation with Morgan, however, Magdhin did characterize them this way. Later that year, the wife of Morgan's brother-in-law was abducted by five armed men.

-4-

The brother-in-law believed that the kidnaping smacked of faith-based hostility.

Morgan further testified that his two other brothers, Michel and Michael, were attacked by five persons in early 2005. Michael sustained bruises. He reported the incident to the police, who went to the homes of the main suspects and left summonses with their parents. Around this time, one of Morgan's brothers received a mailing from an organization called "The Son of Mohamed's Group" threatening the lives of Morgan and various family members.

In the end, the IJ found that Morgan had again failed to carry his burden of proof and denied relief. Morgan appealed anew to the BIA and, while his appeal was pending, moved to remand to the IJ based on her ruling in an unrelated case, namely, In re Abdelmasih, A096 265 892 (Apr. 2, 2009) (unpublished). Morgan attached to his motion the most recent country reports for Egypt, other generalized appraisals of country conditions there, and a letter from an expert, which Morgan believes analogizes his situation to that of the alien in Abdelmasih.

On November 19, 2009, the BIA affirmed the IJ's order of removal and denied Morgan's motion to remand. This timely petition for judicial review followed.

In this venue, Morgan contends that the BIA's order is flawed because the agency did not make an explicit credibility determination; that he carried his burden of proof; and that the

denial of his motion to remand was an abuse of discretion. The statutory framework permits us to consider both the removal order and the denial of the motion to remand in a single proceeding. See 8 U.S.C. § 1252(b)(6). The two rulings, however, remain legally distinct. See Zeru v. Gonzales, 503 F.3d 59, 69 (1st Cir. 2007).

We begin with the order of removal. Where, as here, the BIA affirms and adopts an IJ's decision yet adds its own gloss, "we review the two decisions as a unit." López Pérez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009).

With respect to findings of fact, our assessment is governed by the substantial evidence standard, which demands fealty to findings of fact that are supported by substantial evidence on the record as a whole. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citing 8 U.S.C. § 1105a(a)(4)). Thus, rejecting a factual finding is inappropriate unless the record is such as to compel a reasonable factfinder to reach a different conclusion. López de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007); Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004).

Morgan's lead-off argument is that the IJ should have made an explicit credibility determination. Although he suggests that a credibility determination was critical to the disposition of his claims, that suggestion finds no purchase in the record.

The lack of a credibility determination is a cause for concern only when a claim turns on the veracity of the alien. See

Wan Chien Kho v. Keisler, 505 F.3d 50, 56 (1st Cir. 2007). Because an alien can demonstrate eligibility for relief through his own credible testimony, see, e.g., Villa-Londono v. Holder, 600 F.3d 21, 24 (1st Cir. 2010), there are circumstances in which the alien's credibility must be addressed. See Rotinsulu v. Mukasey, 515 F.3d 68, 73 n.1 (1st Cir. 2008). But a credibility determination is superfluous when the alien's testimony, even if taken at face value, is insufficient to compel an entitlement to relief. See, e.g., Makhoul, 387 F.3d at 81. This is such a case.

The IJ's denial of relief was not premised on any asserted doubts about Morgan's credibility. For aught that appears, she assumed the factual truth of Morgan's testimony, yet drew different conclusions from it than Morgan had hoped. We explain briefly.

The IJ premised her decision on Morgan's failure to carry his burden of proof. Read in context, this indicates that Morgan's factual testimony, even if fully credible, was not such as to support a favorable finding on any of his claims for relief. Having come to this conclusion, the IJ had no obligation to go further and make what would have been a gratuitous credibility determination. See Nai Qing Xu v. Gonzales, 424 F.3d 45, 48 (1st Cir. 2005).

This brings us to Morgan's more global claim that the denial of asylum was not supported by substantial evidence. To be

eligible for asylum, an alien bears the burden of showing that he is unwilling or unable to return to his native land due to a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see id. § 1158(b)(1)(B). An alien may demonstrate this well-founded fear directly or by means of a presumption arising from a history of past persecution.[2] López Pérez, 587 F.3d at 461. Either showing must include a certain level of harm, see, e.g., Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005); some nexus to governmental participation, complicity, or unwillingness or inability to control the alleged persecutors, Raza v. Gonzales, 484 F.3d 125, 129 (1st Cir. 2007); and a link to one of the five statutorily protected grounds, see, e.g., López de Hincapie, 494 F.3d at 217. In addition, the alien's fear must be both subjectively genuine and objectively reasonable. Laurent v. Ashcroft, 359 F.3d 59, 65 (1st Cir. 2004).

In this instance, the IJ accepted the genuineness of Morgan's fear, so our inquiry focuses on objective reasonableness; that is, whether a reasonable person in Morgan's circumstances

---

[2] The record as to past persecution is exactly the same as it was in 2002 (when the dismissal of Morgan's earlier petition for judicial review became final). It is, therefore, at least arguable that the issue of past persecution is no longer open. See United States v. Moran, 393 F.3d 1, 7-8 (1st Cir. 2004); United States v. Rivera-Martínez, 931 F.2d 148, 150-51 (1st Cir. 1991); see also Enwonwu v. Gonzales, 232 F. App'x 11, 13-14 (1st Cir. 2007) (per curiam). But because Morgan's claim fails on the merits, we need not definitively resolve this point.

would fear persecution on account of his religion.[3] See Aquilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999); see also 8 C.F.R. § 208.13(b)(2). The standard is one of a "reasonable possibility of future persecution." López de Hincapie, 494 F.3d at 218.

The IJ's finding that Morgan failed to sustain his claim of a well-founded fear of future persecution may be upheld on any one of three grounds. The first of these grounds relates to harm.

In the last analysis, persecution is a term of art in immigration law. It connotes a level of harm that "requires that the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw, 427 F.3d at 120. Here, the totality of the evidence belies Morgan's claim that he has established an objectively reasonable fear of future persecution.

The harms described here are disagreeable but not shocking. Being taunted, being cut by a bottle, being detained overnight on a single occasion, and being subjected to threats are unpleasant experiences, but determining whether described harms rise to the level of persecution is, except in clear cases, a judgment call — and is committed to agency discretion.[4] We have

_____

[3] Morgan's claims that he fears that he will be persecuted for being "Westernized" or "Americanized" are not cognizable. See Ahmed v. Holder, 611 F.3d 90, 94-95 (1st Cir. 2010). Accordingly, we eschew any discussion of them.

[4] Kidnaping, of course, is a more serious matter — but the one allegation of kidnaping that is mentioned in the record here is

upheld agency determinations that harms considerably more egregious than those described by Morgan failed to rise to the level of persecution. See, e.g., Harutyunyan v. Gonzales, 421 F.3d 64, 66, 68 (1st Cir. 2005) (upholding denial of relief even though alien had been threatened and beaten and his place of business burned to the ground); Bocova v. Gonzales, 412 F.3d 257, 263-64 (1st Cir. 2005) (affirming denial of relief even though alien was subjected to sporadic detentions and beatings). The most telling analogue is our decision in Barsoum v. Holder, 617 F.3d 73 (1st Cir. 2010). There, a Coptic Christian petitioner was targeted by the Muslim Brotherhood in Egypt after he became friendly with a Muslim woman. Id. at 77. Barsoum received repeated threats and was harassed relentlessly in the aftermath of this interfaith relationship. Id. at 77-78. He was then attacked and injured by persons implicitly connected to the earlier threats. Id. We nevertheless concluded that "[t]he BIA was not compelled to find that the harms Barsoum suffered, even viewed collectively, rose to the level of persecution." Id. at 80.

The more recent threats and attacks on Morgan's relatives do not tip the balance. The cases cited by Morgan, in which attacks on family members have led courts to vacate agency denials of claims for relief, are easily distinguishable. See, e.g., Smith v. Holder, ___ F.3d ___, ___ (1st Cir. 2010) [No. 08-2571, slip op.

only tangentially connected to Morgan.

-10-

at 5-6] (remanding where petitioner, a political dissident who had fled Zimbabwe after several arrests and severe beatings by the police, produced specific evidence that government militia in Zimbabwe recently had killed some family members and destroyed their home); Malty v. Ashcroft, 381 F.3d 942, 945-46 (9th Cir. 2004) (remanding where alien's relatives in Egypt had suffered brutal attacks, including torture, at the hands of government operatives).

The second flaw in the tapestry of Morgan's argument relates to the lack of any nexus between the described harms and the Egyptian government. This is fatal because a finding of persecution inevitably depends upon some link to governmental action or inaction. Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006). Where, as in this case, the perpetrators of the alleged harms are not themselves government actors (say, police officers or soldiers), an asylum-seeker must show either that "the alleged persecutors are in league with the government or [that they] are not controllable by the government." Da Silva v. Ashcroft, 394 F.3d 1, 7 (1st Cir. 2005). Morgan has not made such a showing.

There is scant evidence in the record touching upon this point. What little there is conduces to the opposite conclusion. Except for Morgan's single arrest and overnight detention at the hands of the police, Morgan's tormentors were all private citizens. None of them had any apparent connection to the government. In

-11-

addition, the police reports that are in evidence reveal that the authorities took reported incidents seriously and acted appropriately with respect to the information that they received. These actions included visiting the suspects' residences and leaving summonses there. This evidence, combined with the absence of any official complicity in the alleged mistreatment, constitutes substantial evidence of the lack of a government nexus. In turn, that supported finding is legally sufficient to defeat Morgan's claim of persecution. See Orelien, 467 F.3d at 72.

We come next to the third infirmity in Morgan's argument. The IJ held that Morgan failed to establish that the harms of which he complains were suffered "on account of" his Coptic Christian faith. Morgan's assertions to the contrary, the IJ said, were speculative, not fact-based.[5]

Morgan challenges this finding. He contends that the evidence in the record proves that he and his family were targeted on account of their faith. But the IJ's rejection of this contention is supported by substantial evidence. After all, there is no real proof in the record that ties any of the alleged persecution to religious animus; and an alien's speculation or conjecture, unsupported by hard evidence, cannot compel a finding

---

[5] The IJ found that Morgan's "problems began when he interfered with someone else's relationship." To that extent, the IJ added that his problems "certainly do not fall within the ambit of persecution to be addressed by asylum or withholding of removal."

of the necessary link between alleged persecution and a statutorily protected ground.  See Pulisir v. Mukasey, 524 F.3d 302, 309 n.4 (1st Cir. 2008).  In such a situation, the BIA is "not bound either to accept that conjecture or to credit the petitioner's self-serving conclusions."  Id.[6]

This determination is in no way a judgment on Morgan's credibility.  Treating an alien's factual testimony as credible does not entail acceptance of his conclusions as to causation.  See, e.g., López de Hincapie, 494 F.3d at 219.  An IJ may reject "speculation as to motive even while generally finding petitioner credible as to historical facts."  Ziu v. Gonzales, 412 F.3d 202, 204 (1st Cir. 2005) (per curiam) (citation omitted).

To sum up, we do not question the genuineness of Morgan's fears.  Yet it is firmly established that personal animosity, no matter how real, does not suffice to justify a grant of asylum.  Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004); Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987).  Even crediting Morgan's factual testimony, the record in this case supports at least three inferences on which a denial of asylum can rest.  Here, "the IJ's choice between those inferences is, a fortiori, supported

---

[6] The record evidence of the motivation for the attacks on Morgan's family is inconclusive given the absence in the police reports and other documents of any assertion that they were on account of religion.  Neither the attorney letters Morgan submitted nor the police reports corroborated his contention of religious animus, and he did not offer sworn statements from his brothers about their experiences.

by substantial evidence." López de Hincapie, 494 F.3d at 219. Consequently, substantial evidence undergirds the agency's finding that Morgan did not carry his burden of showing a well-founded fear of persecution.

Having disposed of Morgan's asylum claim, we need not linger long over his counterpart claim for withholding of removal. Withholding of removal imposes a "more stringent burden of proof on an alien than does a counterpart claim for asylum." Rodríguez-Ramírez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). This is so because the alien must demonstrate "a clear probability of persecution, rather than merely a well-founded fear of persecution." Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005). It follows that "[w]hen an alien fails to establish a well-founded fear of persecution sufficient to ground an asylum claim, a counterpart claim for withholding of removal (that is, a claim premised on essentially the same facts) necessarily fails." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009). So it is here.

Morgan's skeletal claim for relief under the CAT is easily defenestrated. It is a settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Nikijuluw, 427 F.3d at 120 n.3 (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Morgan's CAT claim is wholly undeveloped and,

-14-

therefore, we deem it abandoned.  See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010); Makhoul, 387 F.3d at 82.

Morgan also challenges the BIA's denial of his motion to remand.  He offers two bases for this challenge.  First, he asserts that there are important similarities between his case and Abdelmasih, such that the IJ's grant of asylum there requires that she take a fresh look at his case.  Second, he suggests that the newly produced evidence regarding conditions in Egypt warrants remand.  We find neither argument persuasive.

A motion to remand is not mentioned in the applicable statutes, regulations, or recorded agency practice.  See Falae v. Gonzales, 411 F.3d 11, 14 (1st Cir. 2005).  We therefore treat a motion to remand as a motion to reopen.  See Mariko v. Holder, ___ F.3d ___, ___ (1st Cir. 2011) [No. 09-1464, slip op. at 11-12] ("When . . . an appealing alien has filed a motion that seeks to have the BIA return an appealed case to the IJ for further proceedings based on newly available information, that motion, however denominated, must satisfy the requirements that attend a motion to reopen.").

"The BIA may rely on any of three independent grounds in denying a motion to reopen: failure to make out a prima facie case for the relief sought; failure to identify new and material evidence, previously unavailable; or, even if these requirements are met, failure to establish an entitlement to the discretionary

-15-

relief sought." Id. at ___ [No. 09-1464, slip op. at 12] (citing INS v. Doherty, 502 U.S. 314, 323 (1992)); see 8 C.F.R. § 1003.2(c)(1). Judicial review of an order denying a motion to reopen is for abuse of discretion. See Doherty, 502 U.S. at 323; Falae, 411 F.3d at 14.

Morgan's first theory is misguided. Asylum cases, virtually by definition, call for individualized determinations. See Bocova, 412 F.3d at 263. An IJ's determination that one Coptic Christian has a well-founded fear of persecution in Egypt does not mean that all Egyptian Coptic Christians deserve asylum. To cinch matters, the decision that Morgan embraces involves someone whose circumstances are only vaguely similar to Morgan's. Merely saying that a case is analogous without affording a principled basis for an analogy has no persuasive force. See, e.g., S. Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 102 (1st Cir. 2002). For these reasons, the decision in Abdelmasih did not in any way establish a prima facie case that Morgan was eligible for asylum.[7]

Morgan's second theory relies on an allegation that country conditions in Egypt have changed noticeably. This theory is equally unavailing.

The generalized country reports that Morgan relies on are cumulative of other evidence in the record. They are not "new" in

___

[7] Morgan wisely refrains from making a stare decisis argument. It is plain that the unreported decision of a single IJ lacks precedential force. See, e.g., Ang, 430 F.3d at 58.

-16-

any meaningful sense.  It follows that the BIA was justified in denying a motion to reopen based on that evidence.  See Ratnasingam v. Holder, 556 F.3d 10, 15 (1st Cir. 2009); Tandayu v. Mukasey, 521 F.3d 97, 100-01 (1st Cir. 2008).  The expert testimony suffers from the same infirmity.  What is more, Morgan has failed to show that it was unavailable at the time of his hearing before the IJ.

If more were needed — and we doubt that it is — none of this evidence shed light on Morgan's particular situation.  That fact serves to weaken its force as a lever for reopening.  See, e.g., Barsoum, 617 F.3d at 82; Tawadrous v. Holder, 565 F.3d 35, 39 (1st Cir. 2009); Tandayu, 521 F.3d at 101.

That ends this aspect of the case.  We conclude, without serious question, that the BIA's denial of Morgan's motion to remand was not an abuse of discretion.

We need go no further.  For the reasons elucidated above, we deny the petition for review.


**So Ordered**.