Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-2435

ILIRJAN SHEHU, ET AL.,

Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Circuit Judge,
Souter,[*] Associate Justice,
and Torresen,[**] District Judge.

Andrew P. Johnson and Law Offices of Andrew P. Johnson for petitioners.
John B. Holt, Trial Attorney, Luis E. Perez, Senior Litigation Counsel, and Stuart F. Delery, Acting Assistant Attorney General, for respondent.

August 9, 2013

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

[**] Of the District of Maine, sitting by designation.

**SOUTER, Associate Justice.** This petition is for review of a judgment of the Board of Immigration Appeals affirming the order of an immigration judge declaring the concededly removable petitioners ineligible for asylum, withholding of removal, and like treatment under the Convention Against Torture. Because petitioners have not shown that a reasonable adjudicator would be compelled to find in their favor on any claimed ground for relief, we affirm.

Ilirjan Shehu is the husband of Raimonda Shehu and father of the two other petitioners, all of them citizens of Albania. The claims of Raimonda and the younger son, Joni, are derivative of Ilirjan's. Although the elder son, Enis, filed his own asylum petition as an adult, his counsel told the judge that his claim rested on "[w]hat happened to his father," J.A. 80, and it will be treated as derivative as well, without need to consider the judge's and Board's reasons for finding him independently ineligible for relief.

The operative facts alleged by the father begin with his participation at a local level in the affairs of the Democratic Party of Albania, the competitor of the Socialist Party. He testified that he was beaten and detained for 12 hours after taking part in a political demonstration in 1997. The next year he demonstrated again after the murder of the leader of his party, and his cousin Adem was killed by a sniper's bullet after his televised

accusation that a police official and Socialist Party member, one Dervishi, had ordered the party leader's killing. Shehu hired investigators to unearth evidence that Dervishi was responsible for Adem's death, and he presented his claim of political assassination to Albanian authorities and Amnesty International. He testified that as he pursued these activities the Socialist government harassed him in his business, which was nonetheless successful enough to allow him to accumulate over $300,000. He also suffered sporadic threats and acts of violence: being assaulted while monitoring an election in 2001; being assaulted the next year by several men, including one he recognized as a Dervishi bodyguard; then having his car stolen and being told that "this time" he was paying only with his car; two years later receiving an extortion demand for money, under threat to the safety of his sons, then in Italy (one of whom was himself threatened); and receiving both a symbolic death threat and a shot through the window of his house in 2004.

After that, he, his wife and younger son entered the United States lawfully on visas, and were joined by the elder son, who was smuggled in illegally. After the visas expired all received notices to leave; none contested removability. Instead they filed claims for asylum as refugees on the ground of persecution and a well-founded fear that they would suffer persecution, that is, that their lives or freedom would be

-3-

threatened because of Shehu's political opinions if returned to Albania, 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A); claims for withholding of removal on the same grounds, id. § 1231(b)(3); and claims for withholding of removal under the Convention Against Torture, on the ground of likely torture if returned, see Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, p. 20, 1465 U.N.T.S. 85; see also 8 C.F.R. §§ 1208.16-1208.18.

Although the Government has argued here that the facts alleged do not rise to the level of persecution under Tobon-Marin v. Mukasey, 512 F.3d 28, 31-32 (1st Cir. 2008), the immigration judge assumed arguendo that Shehu had suffered past persecution, which is enough to raise a rebuttable presumption of future repetition, see 8 C.F.R. § 1208.13(b)(1). The judge nonetheless denied asylum based on a finding that Shehu had failed to carry his burden to show that Albanian persecutory activity was or would be on account of his political opinions, as distinct from personal retaliation by Dervishi, or simple hope of profit from extortion. It is sufficient to limit our own consideration likewise.

Before we reach the motivation issue, however, we should note Shehu's anterior claim of a methodological error in the prior proceedings, though it calls for nothing more than brief mention. He faults the administrative adjudicators for failing to make any

-4-

express finding that he was a credible witness.  But this is no matter if the assumption of credibility would still leave the record inadequate to require reversal or vacatur, Morgan v. Holder, 634 F.3d 53, 57 (1st Cir. 2011).  As will be seen, that is the case here.

Shehu's claim that the judge and Board committed substantive error in failing to find that his political opinions were, and would be, the motivation for persecution goes to an issue on which he had the burden of proof, as with all elements of the asylum claim.  Thus, his burden as asylum applicant, see 8 C.F.R. § 1208.13(a), is to show persecution or a well-founded fear of it if deported to Albania, 8 U.S.C. § 1101(a)(42)(A).  Shehu rests his case for a well-founded fear on a showing of past persecution, which (as we noted) raises a rebuttable presumption of future repetition.  A further essential element of his claim requires showing that the motivation for the persecution or its repetition was, or would be, one of several illegitimate reasons, in this case (as he says) on account of his political opinion, see 8 U.S.C. § 1101(a)(42)(A).

The judge found that his attribution of the harm to his "political activities [was] not plausible," J.A. 62, and the Board agreed that he "did not establish that he encountered problems in Albania because of his political opinion," J.A. 4.  Since judge and Board were in accord, we review both of their findings, which are

-5-

"conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Accordingly, Shehu can prevail only on demonstrating that "the evidence 'points unerringly in the opposite direction'" of the administrative conclusions. Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004)). This he cannot show.[1]

It is not that Shehu has no evidence that he has suffered some harm on account of his expression of political opinion; his first arrest, temporary detention and assault following a political rally are apparent examples, and so possibly is the assault while acting as an election monitor. But for much of the mistreatment he has suffered in the past, and for the violence to be feared if returned to Albania, he has identified Dervishi as the instigator, and he has presented evidence of a distinct and more specific motivation on Dervishi's part than passionate political disagreement. Shehu's testimony describes how he paid for investigation into the circumstances of his cousin's homicide, an investigation he says points to Dervishi as ordering the killing, and which he says he has made known to Amnesty International and to the Albanian government. He has demanded that Dervishi be held

---

[1]Petitioners filed their claims prior to the effective date of the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305, and the statute's burden-of-proof and credibility provisions are therefore inapplicable here, see 8 U.S.C. § 1158(b)(1)(B)(i)-(iii).

responsible. This testimony shows that Dervishi has a personal reason to silence him and those most closely associated with him that can readily be seen as more powerful than the possible provocation of Shehu's political opinions.

To be sure, if Shehu's testimony is credited, the official's personal motive to suppress a troublemaker might well be complemented by expected satisfaction at silencing a voice of political opposition. But this influence is unavailing, for two reasons. The first is that when there are plausible and specific reasons distinct from political opinion for the asylum applicant to take provocative action, and for a putative persecutor to react, showing a general atmosphere of political extremism is insufficient without more to satisfy the burden to show that harm to be feared will be on account of the applicant's own political opinions. See INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992). A second and complementary reason, specific to this case, is that in his own testimony Shehu minimizes the possibility that his political opinion was or would be the provocation for violence against him, if he does not practically rule it out. He stated that Dervishi would "not be opposed to any kind of political belief . . . or any other kind of ideology or belief. He would advance his career and get money." J.A. 198. That is, he attributes Dervishi's actions to personal ambition to hold power and reap reward, and as against this, "the mere existence of a generalized 'political' motive

underlying" the persecutory action does not suffice to establish that Shehu's political opinion are the motivation. <u>Elias-Zacarias</u>, 502 U.S. at 482.

Quite obviously, a reasonable person would not be compelled to reach the conclusion opposite to the judge's and the Board's; the evidence does not point unerringly to Shehu's own politics, rather than his pursuit of Dervishi as a criminal, as the motive for harm rising to the level of persecution that he suffered or may suffer at Dervishi's behest.[2] Since there was no error in denying the claim to eligibility for asylum, it follows that there was none in denying the claim for withholding of removal, which is governed by a heavier burden of proof of prospective persecution for one of the specified reasons, <u>see</u> <u>Lobo</u> v. <u>Holder</u>, 684 F.3d 11, 19-20 (1st Cir. 2012). Finally, the denial of the claim for relief under the Convention Against Torture is likewise free of error, there being no evidence of any likelihood of torture.

For the foregoing reasons, the petition for review is denied.

*It is so ordered.*

---

[2]Given the findings of fact, for which substantial evidence is apparent, this case does not implicate the concept of mixed motivation, <u>see</u> <u>Aliyev</u> v. <u>Mukasey</u>, 549 F.3d 111 (2d Cir. 2008).