# United States Court of Appeals
## For the First Circuit

No. 12-2193

OLUKAYODE GANIYU SAKA,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lipez and Thompson,
<u>Circuit Judges</u>.

Stephen L. Baruffi, on brief for petitioner.
Joanna L. Watson, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, and Jamie M. Dowd, Senior Litigation Counsel, on brief for respondent.

December 23, 2013

**TORRUELLA, <u>Circuit Judge</u>.** Olukayode Ganiyu Saka ("Saka") entered the United States using a false name and fraudulently obtained visa. Upon discovery of this fraud, removal proceedings commenced. Citing fear of religious persecution, Saka filed for withholding of removal and protection under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ"), in a decision later affirmed by the Board of Immigration Appeals ("BIA"), denied this relief and ordered removal. Thereafter, the BIA also denied Saka's motion to reopen, which added a claim for asylum, and his subsequent motion to reconsider. Saka now appeals. Insofar as it relates to his motion to reopen, we dismiss this appeal as untimely. Taking up only his motion to reconsider, we find no evidence of legal error nor an abuse of discretion, and thus, we deny Saka's petition for review.

## I. <u>Background</u>

### A. Removal Proceedings

Saka, a citizen of Nigeria, entered the United States on June 29, 2002, using a doctored passport and fraudulently obtained visa bearing the name Olukayode Olapido-Wemimo. Five years later, still using this false name, Saka filed an application for naturalization. A close review of his application eventually revealed Saka's true identity, and the Department of Homeland Security commenced removal proceedings, alleging that Saka had

-2-

procured admission into the United States by means of fraud or willful misrepresentation.

During removal proceedings, Saka admitted to falsifying his entry documents and conceded removability but, citing fear of persecution in Nigeria based on his 2003 conversion to Christianity, filed for withholding of removal and CAT relief.[1] Saka, who had been raised as a practicing Muslim, testified that his conversion had prompted death threats from angry family members in Nigeria, who believed him an apostate. He suggested that these threats of violence fit a larger pattern of religious persecution in which the Nigerian government was acquiescent. Saka did not seek asylum at this time, informing the IJ that he was aware any claim would be outside the one-year deadline for asylum petitions.

Ultimately, the IJ determined that Saka's testimony was not credible given his past use of falsified documents and his history of making dishonest statements to immigration officials. The IJ also found insufficient evidence that Christians were subject to religious persecution in Nigeria based on their beliefs. Moreover, even had such persecution been proven, the IJ questioned whether Saka was indeed a practicing Christian. Specifically, the IJ expressed significant skepticism as to why, although claiming to have become a devout Christian in 2003, Saka was only baptized in

_____

[1] Saka also sought alternative relief in the form of voluntary departure. The IJ's denial of this request was not appealed and is not relevant here.

-3-

June 2009 -- three months after removal proceedings began. On July 9, 2010, the IJ ordered removal. The BIA affirmed.

## B. Motion to Reopen

On March 19, 2012, Saka filed a motion to reopen, citing changed country conditions. In addition to claiming continued eligibility for withholding of removal and CAT relief, Saka argued that he was newly eligible for asylum because changed country conditions constitute an exception to the one-year deadline for such claims. Saka's motion was supported by evidence purporting to show increased persecution of Christians in Nigeria. Specifically, the evidence pertained to the 2009 Boko Haram Uprising, during which religiously motivated violence left nearly 1,000 Nigerians dead. Saka also provided affidavits from his minister stating that he knew Saka to be a practicing Christian, and from a cousin in Nigeria corroborating Saka's claim that family members remained angry about his conversion.

The BIA denied this motion, finding that both the affidavits and the vast majority of news articles provided by Saka were not newly available, but instead contained information that could have been provided during his initial proceedings. Even assuming that the small number of articles that post-dated Saka's initial proceedings could prove increased persecution, the BIA again stated that Saka had offered inadequate proof that he "is or would be perceived to be Christian" if returned. A written order

-4-

denying Saka's motion was published on May 10, 2012. This order, however, referenced only withholding of removal and CAT relief. No mention was made of Saka's asylum claim; a mistake that would become paramount in later stages of these proceedings.

**C. Motion to Reconsider**

On June 8, 2012, Saka filed a motion to reconsider, asserting that the BIA had erred by: (1) ignoring accounts of significantly increased persecution of Christians in Nigeria, (2) making improper credibility determinations illustrative of an implicit bias against his claims, and (3) failing to address his claim for asylum. The BIA denied this motion, affirming its prior determination that Saka's evidence was not newly available and did not show that he was, in fact, a devout, practicing Christian. It also denied making any improper credibility determinations, reasoning that any evidence discounted in its earlier decision was ignored solely on the basis that it was not newly available.

In contrast, the BIA admitted that it had erred by failing to address Saka's asylum claim, but ultimately found this error harmless. The BIA pointed out that under 8 C.F.R. § 1003.2(c)(1) a timely claim for asylum would face the same standard for reopening as Saka's other claims for withholding of removal and CAT relief. An untimely application for asylum, however, would face an even higher burden, requiring proof of changed country conditions under 8 U.S.C. § 1158(a)(2)(D). Thus,

having failed to present newly available evidence sufficient to reopen under the more forgiving standard, the BIA reasoned that Saka would have necessarily failed to meet the burden for raising his untimely asylum claim as well. Because the BIA found this error to lack materiality, it concluded that reconsideration was unnecessary. A final order denying Saka's motion was entered on September 4, 2012.

## II. Discussion

On October 2, 2012, Saka sought appellate review of both his motion to reopen and his subsequent motion to reconsider. We take up each motion in turn.

### A. Motion to Reopen

Petitioners seeking review of a final BIA order before this court must abide by a strict thirty-day filing deadline. 8 U.S.C. § 1252(b)(1); Ven v. Ashcroft, 386 F.3d 357, 359 (1st Cir. 2004). This deadline runs from the time a final order is entered; subsequent motions before the BIA do not toll or extend it. Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003) (citing Stone v. INS, 514 U.S. 386, 405-06 (1995)). Because this deadline is a jurisdictional requirement, we are strictly bound to dismiss petitions filed beyond its outer limit. Ven, 386 F.3d at 359 (citing Zhang, 348 F.3d at 292).

Saka's appeal was filed approximately five months after the BIA entered a written order denying his motion to reopen, well

-6-

beyond the deadline. Nonetheless, seizing upon the BIA's failure to explicitly resolve his claim for asylum, Saka argues that we retain jurisdiction. Citing a Ninth Circuit case, Go v. Holder, 640 F.3d 1047, 1051 (9th Cir. 2011), he argues that motions remain live so long as any possibility of relief remains. See id. (finding jurisdiction appropriate despite late filing where, in ruling on the motion, the BIA remanded one of three claims for further proceedings). Applying Go's reasoning, Saka theorizes that the BIA's order denying his motion to reopen was not final because it did not specifically foreclose his claim for asylum, thus leaving open some possibility of relief. Under this theory, the motion to reopen became final only on September 4, 2012, when -- in ruling on his subsequent motion to reconsider -- the BIA finally dismissed Saka's asylum claim.

We are unconvinced. Whatever the merits of Go's reasoning, we are neither bound by its precedent nor unable to easily distinguish it from the case at hand. Here, no portion of Saka's claim was remanded for further consideration, and the BIA in no way indicated that additional proceedings were necessary. In contrast, the BIA's order unequivocally stated that "[t]he motion to reopen is denied." This blanket denial is significantly distinct from the facts of Go, which fit neatly into an administrative scheme that allows the BIA to "return a case to . . . an immigration judge for such further action as may be

appropriate, without entering a final decision on the merits."
8 C.F.R. § 1003.1(d)(7).

Simply put, Saka sought to have his proceedings reopened, and the BIA definitively declined to do so. Although the BIA's order failed to make specific mention of Saka's asylum petition, it clearly intended to issue a final denial of all of his claims. Indeed, had Saka timely appealed the denial of his motion to reopen we would have had jurisdiction, if only to remand it to the BIA to properly address the asylum claim. See Halo v. Gonzales, 419 F.3d 15, 18-20 (1st Cir. 2005) (finding remand appropriate where the BIA failed to adequately articulate its reasons for denying asylum). As such, we find that despite the BIA's failure to explicitly dismiss Saka's asylum claim, its May 10, 2012 order did not reasonably suggest any continuing possibility of relief on this motion to reopen.[2]

---

[2]    Although the question here involves the finality of an administrative decision, our precedent regarding finality in the judicial context is informative. In that posture, we have recognized that decisions which are ambiguous, Alman v. Taunton Sportswear Mfg. Corp., 857 F.2d 840, 844 (1st Cir. 1988), or hold over issues for future consideration, United States v. Metro. Dist. Comm'n, 847 F.2d 12, 14 (1st Cir. 1988), may not be final. Because the BIA's order bears no hallmarks of ambiguity and is clearly intended to fully resolve Saka's petition, see id., this precedent further supports our holding. Another accepted arbiter of judicial finality, that there be nothing left to do but execute the judgment, see State St. Bank & Trust Co. v. Brockrim, Inc., 87 F.3d 1487, 1490 (1st Cir. 1996), also gives credence to our finding. Had no motion to reconsider been filed from the BIA's denial, Saka would have become immediately available for removal.

Moreover, adopting Saka's argument in practice would render void the rule that subsequent motions before the BIA cannot toll the thirty-day deadline for judicial appeals. See Zhang, 348 F.3d at 292. It is more than clear that "a motion for reconsideration posits that the decider -- here, the BIA -- made some sort of error in the earlier decision." Liu v. Mukasey, 553 F.3d 37, 39 (1st Cir. 2009). Equally well-accepted is that such error may take the form of "an argument or aspect of the case that was overlooked." Muyubisnay-Cungachi v. Holder, 734 F.3d 66, 70 (1st Cir. 2013) (emphasis added) (quoting Asemota v. Gonzales, 420 F.3d 32, 33 (1st Cir. 2005)). Thus, motions to reconsider may commonly proceed on the theory that the agency's prior determination ignored or omitted some legal claim.

Yet, Saka would have us find that in all such cases the appeals deadline is held over until that claim is definitively resolved. While dressed up in the language of finality, what this argument proposes is no more than a form of tolling. Finality would come only when the BIA ruled on the subsequent motion to reconsider, effectively pausing the appeals-deadline clock in the interim. We refuse to adopt a rule that would wreak such havoc on the accepted relationship between administrative and judicial review of immigration proceedings.

Finding that Saka's appeal from the denial of his motion to reopen is untimely, we dismiss.

**B. Motion to Reconsider**

Because Saka's appeal from the denial of his motion to reconsider is timely, we review it on the merits.[3]  We review the BIA's denial of a motion to reconsider for abuse of discretion. Nascimiento v. INS, 274 F.3d 26, 28 (1st Cir. 2001); see also Lasprilla v. Ashcroft, 365 F.3d 98, 99 (1st Cir. 2004).  Under this deferential standard, we uphold decisions unless they are "made without a rational explanation, inexplicably depart[] from established policies, or rest[] on an impermissible basis." Nascimiento, 274 F.3d at 28.  Any error of law is, inherently, an abuse of discretion.  Top Entm't, Inc. v. Torrejón, 351 F.3d 531, 533 (1st Cir. 2003).

Saka's main argument on appeal is that the BIA impermissibly attempted to explain away its failure to resolve his asylum claim with "post hoc rationalization[s]."  He asserts that

---

[3]  We do not believe taking up review of the merits in any way contradicts our recent decision in Charuc v. Holder, No. 13-1504, 2013 WL 6335878 (1st Cir. Dec. 6, 2013).  That case found no jurisdiction to review a motion to reconsider where the underlying claim for relief -- an untimely motion asking the BIA to employ its discretionary power to undertake sua sponte review outside the statutory deadline -- was wholly discretionary. Id. at *2.  Where, as here, we lack jurisdiction over the underlying claim only because no timely appeal was taken from that decision, not because the discretionary nature of the relief sought made the agency's decision unreviewable, we believe our jurisdiction over a timely appeal from a subsequent motion to reconsider remains. See, e.g., Zhang, 348 F.3d at 292 (taking up review of a timely filed appeal from the denial of a motion to reopen and a motion to reconsider despite finding a lack of jurisdiction to review the BIA's initial denial of relief).

-10-

the BIA's determination that its error was immaterial runs afoul of SEC v. Chenery Corp., 318 U.S. 80 (1943), which requires that agency determinations clearly delineate the basis for their holdings. In support of this theory, Saka cites a number of our opinions remanding issues to the BIA for failure to clearly substantiate a legal basis for its decision. See, e.g., Seong v. Holder, 677 F.3d 484, 489 (1st Cir. 2012); Kadri v. Mukasey, 543 F.3d 16, 21-22 (1st Cir. 2008).

We reject this argument, as it significantly misconstrues the applicability of these cited holdings to the instant case. Without a doubt, judicial review is predicated on the requirement that "agencies provide reasoned bases for their decision[s]." Albathani v. INS, 318 F.3d 365, 377 (1st Cir. 2003) (citing Chenery Corp., 318 U.S. at 196-97). This case, however, presents no question concerning the scope of judicial review. The issue on appeal focuses on whether the BIA acted appropriately in resolving an error originating from an earlier BIA decision. The holding of Chenery Corp. simply does not govern an administrative agency's review of its own prior decision. Cf. Lasprilla, 365 F.3d at 100 (holding that the BIA need not even "explain its reasons when deciding a motion to reconsider"); Albathani, 318 F.3d at 377 (holding that, so long as a rational basis was set forth in some stage of agency proceedings, the BIA may affirm IJ decisions

-11-

without an opinion).[4]  Therefore, we find no indication that the BIA's decision to assess the materiality of its prior error in ruling on a motion to reconsider was, itself, in error.  See Liu, 553 F.3d at 40 (finding the denial of a motion to reconsider appropriate based on petitioner's "fail[ure] to identify any material error of law or fact in the earlier decision").

Next, we turn to whether the BIA's ultimate conclusion was an abuse of discretion.  Noting that "the purpose of a motion to reconsider is not to raise new facts," Zhang, 348 F.3d at 293, we see no such abuse in the BIA's materiality analysis.  Where legal claims are predicated on identical facts and are reviewed under the same standard, it is more than reasonable to hold that where one claim falls, the other falls with it.  See, e.g., Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009).  Having affirmed its earlier determination regarding Saka's failure to present new evidence,[5] the BIA noted that -- at a minimum -- Saka's claim for

---

[4]  It is unclear whether Saka is now attempting to construe his motion to reconsider as a sort of motion to remand.  As a practical matter, however, any such attempt is inapt.  Saka never brought his asylum petition before the IJ; it was filed initially with the BIA as part of his motion to reopen.  Moreover, motions to remand are generally based on the presentation of new evidence, and are consequently treated by our court as motions to reopen.  Morgan v. Holder, 634 F.3d 53, 60 (1st Cir. 2011).  Therefore, even were such an alteration possible, not only would our review still proceed under an abuse-of-discretion standard, see id. at 61, but Saka would face the numerical bar applicable to such motions, Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

[5]  Because our focus is limited to Saka's motion to reconsider, we do not directly review the BIA's determination, made in its denial

asylum would have faced the same standard for reopening that his other claims had already failed.  See 8 C.F.R. § 1003.2(c)(1). More precisely, the BIA reasoned, the standard for his asylum claim would actually be stricter, given that it had not been filed during initial proceedings and was admittedly untimely.  See 8 U.S.C. § 1158(a)(2)(D).  Far from irrational, the BIA's conclusion appears to have fully considered and reasonably applied the relevant legal standards.  Thus, we are untroubled by the BIA's decision to resolve Saka's claim of legal error without reconsideration.

Saka's final two claims of error we reach only briefly, as they are clearly not meritorious.  First, he attempts to construct legal error from the BIA's refusal to apply Ninth Circuit precedent to this case.  This argument lacks foundation.  Although the BIA could have chosen to seek interpretative guidance from our sister circuits, the decision not to do so is no way an error of law, much less an abuse of discretion.  See Kechichian v. Mukasey, 535 F.3d 15, 22 (1st Cir. 2008).

We similarly find lacking Saka's claim that the BIA demonstrated an implicit bias against him by neglecting evidence and undertaking improper credibility determinations.  For one, we disagree that the BIA was incorrect to refer to Saka's supplemental affidavits and corrected I-589 as "The Corrected Mistakes."  A

of Saka's motion to reopen, that he did not present newly available evidence.

-13-

simple review of the administrative record makes clear that Saka himself, in filing these documents, titled them "The Corrected Mistakes." While we doubt such terminology would substantiate an abuse of discretion regardless, we are more than certain it does not do so here.

For another, we reject Saka's suggestion that the BIA, by referencing the IJ's adverse credibility determination, made an improper factual finding. This argument starts from the flawed premise that the BIA had previously rejected the IJ's adverse credibility determination. Even a cursory review of the record reveals that is not the case. The BIA, in its initial opinion affirming the IJ, simply did not reach the issue of credibility, finding sufficient other reasons to dismiss. No later opinion questioned the IJ's determination, and the BIA did not err by referencing this settled finding when considering whether its motion to reopen had given proper weight to Saka's evidence.

### III. <u>Conclusion</u>

For the reasons stated herein, Saka's petition to review his motion to reopen is dismissed, and the petition to review his motion to reconsider denied.

**<u>Denied</u>**.